# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### BRYSON CITY DIVISION

## CIVIL NO.  2:04CV174

| | | |
|---|---|---|
| MELVIN PIEDMONT NURSERY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | **MEMORANDUM OF OPINION** |
| | ) | |
| E. I. DUPONT DE NEMOURS | ) | |
| AND COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

THIS MATTER is before the Court on the Plaintiff's objections to the Memorandum and Recommendation of United States Magistrate Judge Dennis L. Howell.  Other motions filed subsequent to that decision will be addressed herein.[1]

---

[1]Defense counsel is urged, in the future, not to use single spacing in its briefs and legal arguments.  The standard practice before the undersigned is the use of a size 12 font and double spacing in all briefs.  The advent of electronic filing makes this practice even more compelling because when the document is retrieved and printed, the text is significantly smaller than would be the case with an original-filed document.

# I. PROCEDURAL HISTORY

On March 23, 2004, the Plaintiff Melvin Piedmont Nursery (Nursery) brought an action against the Defendant E. I. DuPont de Nemours and Company (DuPont) in the General Court of Justice, Superior Court Division of Macon County, North Carolina.[2]  The Plaintiff alleged that in February 1996, it retained Roland St. Louis (St. Louis), an attorney located in Florida, to prosecute claims on its behalf against DuPont in connection with the use of Benlate, a fungicide and chemical allegedly used by the Plaintiff in its nursery business.  The Plaintiff also alleged that at an undisclosed time, St. Louis and DuPont entered into a settlement agreement concerning these claims and cash was paid to St. Louis by DuPont.  However, according to Plaintiff, St. Louis failed to account to the Plaintiff for these sums and paid himself for his attorneys' fees from the settlement proceeds without authorization from the Plaintiff.  It is also alleged that DuPont paid the Plaintiff's attorney $245,000 in the form of a "Secret Expense Agreement" and an additional sum of $6,445,000 in the form of a "Secret DuPont Engagement Agreement."  The

---

[2]Richard Melvin, who is an attorney, signed the complaint on behalf of the Plaintiff in a *pro se* status but listed the law firm to which he belongs as the attorney of record.

complaint is somewhat confusing since in the body thereof reference is made to St. Louis and his law firm as being Defendants. However, only DuPont is named as a Defendant in the caption of the complaint. In the complaint, it is claimed that the attorneys breached their fiduciary duties to the Plaintiff and also that DuPont is liable for negligence and strict products liability in the manufacture and sale of the Benlate product. Plaintiff also alleged that DuPont committed unfair and deceptive trade practices and civil RICO violations.[3]

On August 20, 2004, DuPont removed the action to this Court based on federal question and diversity jurisdiction. On April 11, 2005, a pretrial order and case management plan was entered setting the discovery deadline as July 1, 2005, and the motions deadline as August 1, 2005. The case is scheduled for trial during the December 2005 term of Court.

On July 12, 2005, the Magistrate Judge entered a Memorandum and Recommendation addressing the Defendant's motion for summary judgment and recommended the motion be granted on the ground of judicial estoppel and the alternative ground of quasi-estoppel. On July 25, 2005, the Plaintiff

---

[3]18 U.S.C. § 1961, *et seq.*, Racketeer Influenced and Corrupt Organizations.

filed objections to the Memorandum and Recommendation. On August 2, 2005, DuPont responded to those objections. On August 5, 2005, the Plaintiff filed a "Brief on Objections to Recommendations of Magistrate." This prompted DuPont to move to strike the brief as untimely which was followed by the Plaintiff's motions to strike irrelevant comments contained within the Memorandum and Recommendation and to set aside and vacate recommendations therein concerning tax implications.

## II. BACKGROUND

In the early 1990's, hundreds of lawsuits were brought against DuPont by nurseries and plant growers asserting products liabilities claims based on property damage due to DuPont's fungicide Benlate. ***Florida Evergreen Foliage v. E.I. DuPont de Nemours*, 135 F.Supp.2d 1271, 1275 (S.D. Fla. 2001),** *aff'd*, **341 F.3d 1292 (11th Cir. 2003).** St. Louis and his law firm, Friedman, Rodriquez, Ferraro & St. Louis, P.A., represented many of the claimants in connection with these suits. ***Id.*, at 135 F.Supp.2d 1282.** In lawsuits subsequently brought by the claimants against St. Louis and his firm, it has been alleged that "in August 1996, the law firm defendants accepted a

secret bribe from DuPont in connection with the settlement of [those] claims."
*Id.* Apparently, it was alleged that in exchange for entering into settlement agreements with the clients of St. Louis' firm, DuPont required the attorneys to sign agreements promising not to prosecute future such claims against DuPont. *Id.* **(citing *Gilley v. Friedman, Rodriguez, Ferraro & St. Louis, P.A.*, Case No. 98-2781-CA, *then pending before* Circuit Court for the Eighth Judicial Circuit, Alachua County, Florida).** In addition, either DuPont or the attorneys themselves proposed the payment to the attorneys by DuPont of an additional sum of money in exchange for that promise. *Id.* The law firm's clients were unaware of this side agreement until after the settlement was enforced. *Id.*

As noted above, in this lawsuit, the Plaintiff does not sue St. Louis or his law firm but claims that DuPont, in extracting or agreeing to the side agreement and settlement, engaged in unfair and deceptive trade practices and/or civil RICO violations.

## III.  DISCUSSION

The Court summarizes the Magistrate Judge's findings as follows.  From an undisclosed point in time until 1983, the Nursery was owned and operated by the Estate of William H. Melvin, who was the father of Richard and Paul Melvin.  In 1983, Paul Melvin (Paul) began to run the operation and changed its name to Melvin-Piedmont Nurseries, Inc. (Nurseries, Inc.).  **See, Exhibit 2, Affidavit of Paul Melvin, *included in* Appendix I *to* Defendant's Motion for Summary Judgment ["Defendant's Appendix I"], filed April 22, 2005; *id*., at Exhibit 4, Articles of Incorporation of Melvin-Piedmont Nurseries, Inc.**  The nursery, which was located at all times in Florida, continued to be operated on real estate owned by the Estate until 1990.  Nurseries, Inc., ceased doing business and was dissolved in November 1990.  **Id., at Exhibit 18.**  The real estate on which the nursery had been operated was sold in February 1995 for the sum of $715,000.

In August 1996, Paul entered into a settlement agreement on behalf of Nurseries, Inc., in connection with a Benlate products liability claim against DuPont.  **Paul Melvin Affidavit, *supra*, ¶ 7.**  Paul and Nurseries, Inc., were

represented by St. Louis and his law firm in that settlement. *Id.* Richard

Melvin (Richard) was not involved in that litigation. *Id.*, ¶ 8.

In 1998, Richard, acting on behalf of his siblings whom he described as

putative partners, retained counsel to sue St. Louis and his law firm on behalf

of the Nursery, the predecessor organization, in Florida state court. **Exhibit**

**21, Complaint,** ***Melvin-Piedmont Nursery v. Roland R. St. Louis, et al*., No.**

**98-21957 CA 04 ["the Florida litigation"],** ***included in*** **Defendant's Appendix**

**I.** In that action, it was alleged that the law firm had been retained by the

predecessor firm, not Nurseries, Inc., to pursue Benlate litigation against

DuPont but had failed to achieve settlement. *Id.,* ¶¶ 6, 9. It was alleged that

the predecessor firm was a partnership existing under Florida law. *Id.*, ¶ 3. It

was also represented that the predecessor organization was still in existence

and that Richard, not Paul, retained St. Louis' law firm in 1996 to represent

the nursery against DuPont. *Id.*, ¶¶ 3, 6. And, it was alleged that the law

firm failed to effect a settlement on behalf of the predecessor firm. *Id.*, ¶ 9.

Instead, the law firm "settled [the litigation] in the name of Melvin-Piedmont

Nurseries, Inc. [], or an entity created by Paul Melvin, a partner in [the

predecessor organization], and the settlement proceeds were received by such

entity and not [the predecessor]." **Id.** That litigation is still pending. **See,**
**Exhibit 23,** *included in* **Defendant's Appendix I.**

In August 2000, Paul, acting on behalf of Nurseries, Inc., sued St.
Louis and his firm for improprieties in connection with the settlement. In
August 2001, Richard, acting on behalf of the predecessor nursery, sued in
North Carolina state court and made the following representations: (1)
Nursery was a partnership doing business and maintaining records in North
Carolina; (2) Nursery retained St. Louis in 1996 to prosecute its Benlate
claims; (3) St. Louis settled the claims against DuPont; (4) St. Louis
concealed the side agreements; and (5) St. Louis failed to ensure that the
settlement proceeds were paid to Nursery. **See, Exhibit 24, Complaint,**
**Melvin Piedmont Nursery v. Roland R. St. Louis, et al., No. 01-CVS-549**
**["the North Carolina litigation"],** *included in* **Defendant's Appendix I.** In May
2002, Richard answered a request for admissions in the North Carolina
litigation admitting that Melvin Piedmont Nursery had not previously settled
any claims with DuPont and had not received the proceeds from any
settlement from DuPont. **Id., at Exhibit 25.** He also admitted, however, that
Melvin Piedmont Nurseries, Inc., did receive such a settlement. **Id.**

The Magistrate Judge found that the Nursery was judicially estopped from prosecuting this action, citing positions intentionally asserted here which are factually incompatible with those taken in prior proceedings and which were accepted by prior tribunals.  Specific instances cited by the Magistrate Judge include claims that the Nursery is an extant partnership doing business in North Carolina in the face of previous representations to a North Carolina court that Nursery was only a business name used by the Estate of Richard's father.  In the Florida litigation, Nursery alleged that Richard retained St. Louis;  whereas in the North Carolina litigation, it is alleged that the Nursery did so.  In the Florida litigation, it was alleged that no settlement occurred; however, it was later admitted in the North Carolina litigation that a settlement was achieved.  Numerous other inconsistencies were discussed by the Magistrate Judge.  **See, Memorandum and Recommendation, at 3-9.**

The last paragraph of the Memorandum and Recommendation contains the following directive:

> The parties are hereby advised that, pursuant 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within fourteen (14) days of service of same. Failure to file objections to this Memorandum and

Recommendation with the district court will preclude the parties
from raising such objections on appeal.

***Id*., at 21 (citations omitted).**  On July 25, 2005, 13 days after entry of the
Memorandum and Recommendation, the Plaintiff filed eleven objections – six
objections to factual findings and five objections to legal conclusions –
contained in a two-page document which made no citation to the record of
the case or case law.  ***See* Plaintiff's Objections to Recommendations of the
Magistrate, filed July 25, 2005.**  On August 5, 2005, 24 days after entry of
the Memorandum and Recommendation, the Plaintiff filed a 12-page brief in
support of the objections.  Attached to the brief were 24 exhibits, five of
which were never presented to the Magistrate Judge.  DuPont promptly moved
to strike this pleading as untimely.  **DuPont's Motion to Strike Plaintiff's Brief
on Objections to Recommendation of Magistrate, filed August 9, 2005.**

Title 28 U.S.C. § 636 provides in pertinent part:

[A] judge may . . . designate a magistrate judge to conduct
hearings, including evidentiary hearings, and to submit to a judge
of the court proposed findings of fact and recommendations for
the disposition, by a judge of the court, of [a] motion [for
summary judgment]. . . .  Within ten days after being served with
a copy, any party may serve and file written objections to such
proposed findings and recommendations as provided by rules of
court.  A judge of the court shall make a *de novo* determination of

those portions of the report or specified proposed findings or recommendations to which objection is made.

**28 U.S.C. § 636(b)(1)(B), (C).**  Rule 72 of the Federal Rules of Civil

Procedure provides in pertinent part:

> Within 10 days after being served with a copy of the recommended disposition, a party may serve and file specific, written objections to the proposed findings and recommendations. A party may respond to another party's objections within 10 days after being served with a copy thereof.  The district judge to whom the case is assigned shall make a *de novo* determination upon the record . . . of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule.

**Fed. R. Civ. P. 72(b).**  In response to the Defendant's motion, Plaintiff

responded merely that it filed its objections within the proper time period and

"Counsel has found no current authority on the issue raised by Defendant as

to when filing of a brief supporting objections is due."  **Plaintiff's Response to**

**Defendant's Motion to Strike, filed August 22, 2005.**

The short answer to this claim is that there is no right to file separately

and outside the ten-day time limit a brief supporting objections; indeed, the

Federal Magistrate's Act contemplates that the objections shall encompass the

entire argument of a litigant in opposition to the Magistrate Judge's

Memorandum and Recommendation.  ***See, e.g., Diamond v. Colonial Life &***

***Accident Ins. Co.*, 416 F.3d 310, 315-16 (4th Cir. 2005) (Plaintiff who failed to file objections to the second memorandum and recommendation of the Magistrate Judge waived her right to review by the district court and the appellate court.).**

> The Federal Magistrates Act requires a district court to "make a *de novo* determination *of those portions* of the [magistrate judge's] report . . . to which specific objection is made." By contrast, in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." [T]he Act can[not] be interpreted to permit a party . . . to ignore his right to file objections with the district court without imperiling his right to raise the objections in the circuit court of appeals." The Supreme Court has expressly upheld the validity of such a waiver rule, explaining that "[t]he filing of objections to a magistrate's report enables the district judge to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute." Absent such a rule, litigants would have little incentive to object in the district court, and "any issue before the magistrate would be a proper subject of judicial review." The Magistrates Act does not contemplate such an obviously inefficient use of judicial resources[.]

***Id.* (quoting 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *United States v. Schronce*, 727 F.2d 91, 93-94 (4th Cir. 1984); *Thomas v. Arn*, 474 U.S. 140, 147 (1985)) (other citations omitted).** Such is the case here. The Plaintiff filed objections within the time period and only those objections need be considered by the Court.

That does not end the discussion, however, because the timely objections filed by the Plaintiff are not specific objections. Plaintiff objected to six separate findings of fact without any citation to the record or explanation as to why those findings were inaccurate. Plaintiff objected to five conclusions of law without any citation to case law. In fact, Plaintiff did nothing more than assert "boilerplate" objections, such as "the doctrines of judicial estoppel and 'equitable estoppel' are [in]applicable in this proceeding to Plaintiff." **Plaintiff's Objections,** *supra***, ¶ 10.**

> Th[is] is the very disregard for the role of district courts that the waiver rule is designed to combat. As the Supreme Court explained in *Thomas* [*v. Arn*, *supra*], "by precluding appellate review of any issue not contained in objections[,] [the waiver rule] prevents a litigant from 'sandbagging' the district judge by failing to object and then appealing."

*Wells v. Shriners Hospital***, 109 F.3d 198, 200 (4th Cir. 1997) (quoting**

***Thomas, supra***, at 147-48).** "In the absence of 'specific written objection,' the district court [is] free to adopt the magistrate judge's recommendation . . . without conducting a *de novo* review, and [Plaintiff] 'waive[d] [its] right to a[] [*de novo* review' on that claim." ***Diamond***, **416 F.3d at 316 (citations omitted).**

Such is the case here and the Court finds that the Magistrate Judge's recommendation should be adopted.[4]

The Plaintiff's motion to set aside what it characterizes as "irrelevant comments" by the Magistrate Judge is denied. Obviously, the Magistrate Judge concluded his comments were relevant and it is not the purvey of the undersigned to edit the legal opinions of other judges.

Plaintiff also moved to set aside any comments in the Magistrate Judge's recommendation concerning tax exhibits. First, the contents of that motion should have been included in Plaintiff's objections to the Memorandum and Recommendation, however, since the motion was filed on September 1, 2005, it is untimely. Second, the tax exhibits were filed by the Defendant under seal by agreement with Plaintiff's counsel, an agreement elicited by the Magistrate Judge in open court and placed on the record.

_____

[4]It is also worth noting that the statute of limitations as to any RICO claims in this litigation has long since expired. ***Potomac Elec. Power Co. v. Elec. Motor & Supply, Inc.,* 262 F.3d 260, 266 (4th Cir. 2001) (citing *Rotella v. Wood*, 528 U.S. 549, 555 (2000) (The RICO statute of limitations is four years from the date of discovery or the date when the injury should have been discovered.).** The Plaintiff sued in 1998 alleging the fraudulent conduct of DuPont in connection with the Benlate litigation and the St. Louis law firm. Clearly, it was aware of the injury at that time, but waited six more years to sue in this Court.

Finally, the Magistrate Judge recommended a referral of this matter to the United States Attorney.  While the undersigned takes no position on that issue, the Magistrate Judge certainly has the authority and discretion to do so.


## IV.  ORDER

**IT IS, THEREFORE, ORDERED** that the Defendant's motion for summary judgment is hereby **GRANTED.**  A Judgment dismissing this action is filed herewith.

**IT IS FURTHER ORDERED** that the Plaintiff's motions to set aside and to strike are hereby **DENIED**.

**IT IS FURTHER ORDERED** that the Defendant's motion to strike is **DENIED.**

**Signed: November 7, 2005**

Lacy H. Thornburg
United States District Judge